## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MT. HAWLEY INSURANCE COMPANY,
a Illinois corporation,

      Plaintiff,

vs.

CASE NO: 6:11-cv-426-orl-19KRS

TARRAGON CORPORATION,
a Nevada corporation,
CELEBRATION TARRAGON, LLC,
a Florida limited liability company,
TARRAGON SOUTH DEVELOPMENT CORP.,
a Nevada corporation, and
WATERSTREET AT CELEBRATION
CONDOMINIUM ASSOCIATION, INC.
a Florida corporation,

      Defendants.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Mt. Hawley Insurance Company ("Mt. Hawley") sues Tarragon Corporation, Celebration Tarragon, LLC ("Celebration Tarragon"), Tarragon South Development Corp. ("Tarragon South"), and Waterstreet at Celebration Condominium Association, Inc. (the "Association") (all of the defendants except the Association are collectively referred to as the "Tarragon Entities"), and alleges:

### NATURE OF ACTION

1.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 to resolve an actual controversy between the parties regarding insurance coverage for the Tarragon Entities under three policies issued by Mt. Hawley.

## THE PARTIES

2.     Plaintiff, Mt. Hawley, is an Illinois corporation with its principal place of business in Peoria, Illinois.

3.     Defendant, Tarragon Corporation, is a Nevada corporation with its principal place of business in New York, New York.   Tarragon Corporation was the owner and developer of the Waterstreet at Celebration Condominium Complex (the "condominium").

4.     Defendant, Celebration Tarragon, is a Florida limited liability company with its principal place of business in New York, New York.   Its manager and member is Tarragon Corporation.   Celebration Tarragon was the record owner and developer of the condominium.

5.     Defendant, Tarragon South, is a Nevada corporation with its principal place of business in Fort Lauderdale, Florida.   Tarragon South was the owner and developer of the condominium.

6.     Defendant, the Association, is a Florida corporation with its principal place of business in Celebration, Florida.   The Tarragon Entities assigned their rights under the Mt. Hawley policies to the Association, which is prohibited under Section VII of the policies.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. §1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest and costs.

8.     Venue is proper in this district since "a substantial part of the events… giving rise to the claim occurred" in this district. 28 U.S.C. §1391(a)(2).   More specifically, the insurance

14502927v1 0916579 11654

policies were issued and delivered in this district, the underlying lawsuit is venued in this district, and the claims accrued here.

9.    All conditions precedent to filing this lawsuit have occurred, been performed or have been waived.

## COMMON ALLEGATIONS

10.    *UNDERLYING LAWSUIT:*    The Association filed suit against the Tarragon Entities, among others, in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida, Case No. CA 08-CI-001486.    A copy of the second and third amended complaints ("complaint") are attached as Composite Exhibit "A."

11.    In the complaint, the Association alleges various construction defects at the condominium.

12.    The complaint alleges that the Tarragon Entities controlled the condominium association until at least June 21, 2005.

13.    The Association alleges that the defects and deficiencies were not readily discoverable and that it only became aware of them through inspections performed by expert consultants.  An inspection report was initially prepared by Slider Engineering in April 2006 and a supplemental report was prepared by Marcon Forensics in September 2006.

14.    Count II of the complaint is against the Tarragon Entities, among other defendants, and alleges building code violations.

15.    Count III is for breach of statutory warranties against the Tarragon Entities, among other defendants.  The Associations alleges that the Tarragon Entities impliedly warranted that the property was designed and constructed free from defects or deficiencies and that the

14502927v1 0916579 11654

Tarragon Entities breached these implied statutory warranties by creating the alleged defects and conditions.

16.    Count IV is for breach of contract solely against Celebration Tarragon.   The Association alleges that Celebration Tarragon breached the unit purchase contracts by delivering units, common areas, and improvements that were designed and constructed in a defective and deficient manner.

17.    Count V is solely against Celebration Tarragon for unfair and deceptive trade practices and alleges that Celebration Tarragon misled consumers in violation of Florida Statutes § 501.204(1) by making express and implied representations that the units and common areas were constructed in a workmanlike manner and negligently, recklessly, and intentionally concealing known defects in derogation of Florida law.

18.    *CONDOMINIUM CONVERSION:*   On November 17, 2003, Tarragon Corporation entered into a Purchase and Sale Agreement (the "Agreement") with Lions Gables Realty Limited Partnership f/k/a Gables Realty Limited Partnership ("Gables Realty") for the subject property, which was an apartment complex at the time the Agreement was executed.  A copy of the Agreement, including the first through third amendments thereto, is attached as Composite Exhibit "B."

19.    The Agreement, titled "PURCHASE AND SALE AGREEMENT (GABLES CELEBRATION APARTMENTS)," contains the following pertinent provisions regarding the conversion of the apartments to condominiums:

> WHEREAS, Seller is the owner of the real property and the 231 unit apartment complex theron commonly known as Gables Celebration Apartments (the "Apartment Complex"), located at 701 Celebration Avenue, Celebration, FL 34747; and

14502927v1 0916579 11654

WHEREAS, Purchaser desires to acquire the Apartment Complex from Seller and Seller desires to transfer the Apartment Complex to Purchaser...

### ARTICLE 1.
### DEFINITIONS

1.1     In this Agreement, and in the Exhibits and Schedules attached hereto, the following words and phrases shall have the following meanings:

"Improvements" means the Apartment Complex located on the Land, and all other buildings structures, and improvements located on the Land.

### ARTICLE 4.
### DELIVERY OF DOCUMENTS

4.1     Seller shall deliver (except as set forth in Section 4.1(a) below) completed and legible copies of the following instruments and documents to Purchaser within five (5) Business days after the date hereof:

(j)     Copies of the Declaration and all other documents in Seller's possession or control pertaining to the Condominium (as such terms are defined in Article 15).

### ARTICLE 15.
### SPECIAL PROVISIONS CONCERNING CONDOMINIUM CONVERSION

15.1    The Property is subject to the Declaration of Condominium for Water Street Condominium (the "Condominium") as amended, from time to time (the "Declaration")....Though the Property has been associated with condominium ownership, Seller has not complied with any of the legal requirements associated with condominium ownership; it has owned and operated the Apartment Complex as if it were a non-condominium rental apartment community. At Closing, Seller will execute and deliver to Purchaser such documents as Purchaser may reasonably require in order to obtain the benefit, if any, of the Declaration and Seller's rights, if any, as developer or sponsor thereunder. However, any such documentation shall not include any representations or warranties on behalf of the Seller but rather shall be made on an "As-Is" basis.

15.2    If the Purchaser, or any of its successors or assigns shall elect to conduct a program of sales of condominium units within the Property, it shall provide the Seller with copies of the proposed condominium documentation in advance of submission to any government agency with jurisdiction over such sales program. The proposed condominium documentation shall reflect a "Developer" other than the Seller and (unless required by applicable law), and except as may otherwise be required by law, shall contain no terms or provisions which would permit a proposed unit buyer to learn that the Seller was involved or connected with the

14502927v1  0916579  11654

Property or the proposed condominium in any manner other than as the grantor under the deed by which the Purchaser acquires title.

15.3    Purchaser agrees that at Closing, it will indemnify and hold the Seller and any of its affiliates, and their respective officers, directors, and employees or agents harmless from and against the following (collectively, the "Claims"): all losses, costs, claims, liabilities, damages and expenses, including without limitations, interest, penalties and reasonable attorney's fees and disbursements and cost associated with defending any action in the manner of Seller's choosing, which Seller may suffer, incur or be obligated to perform as a result of Purchaser, or any of its successors or assigns converting the form of ownership of the Property to a condominium form of ownership and/or selling residential condominium units within the Apartment Complex.  Purchaser's indemnity with respect to Claims shall be in effect regardless of whether the Claims result from actions of condominium unit owners, condominium unit vendees or a condominium or property owners' association and regardless of whether such Claims relate to the construction of the Property or any other matter, nature or thing, whatsoever.

15.5    Except as expressly permitted below in this Section 15, prior to Closing, Purchaser shall not undertake or commence any sales or marketing activities regarding the conversion of the Property to a condominium form of ownership or to the marketing or sale of condominium units therein, including, without limitation, the submittal or filing of any documentation regarding the conversion of the Property to a condominium form of ownership or the marketing or sale of condominium units therein.  Additionally, and not by way of limitation, neither Purchaser or any officer, director, shareholder, agent, representative of Purchaser or any affiliate of Purchaser, shall communicate any information about or concerning the future or potential conversion of the Property to a condominium form of ownership, nor the sale or marketing of any condominium unit therein, to any existing or potential tenant of the Seller or the Property…

15.7    Subject to Purchaser's compliance with the provisions of 15.5 and 15.6 above, Seller agrees to reasonably cooperate with the Purchaser in Purchaser's preparation of documentation necessary to convert the Property to a condominium form of ownership, so long as Seller shall not be required to bear, suffer or incur any cost, expense or liability with regard thereto.

15.9    If the Termination Deadline shall have expired without Purchaser delivering a Notice of Termination[1], Purchaser shall have the right to use and occupy three vacant units at the Property of different model types selected by

---

[1] This is the language of Part 15.9 of the Purchase and Sale Agreement as modified by the Second Amendment to the Purchase and Sale Agreement, dated January 16, 2004.

14502927v1 0916579 11654

Purchaser, for use by Purchaser as model units and/or sales offices for the condominium conversion…

20. Tarragon Corporation assigned the Agreement to Celebration Tarragon, which, in turn, converted the subject property from an apartment complex to a condominium and sold condominium units to the public.

21. *MT. HAWLEY POLICIES:* Mt. Hawley issued three excess general liability policies (the "Policies"):

a. Policy No. SLO0001290, effective 09/26/2003 to 12/01/2004, was issued to "Tarragon Realty Investors" as the Named Insured. Under a Change Endorsement effective July 1, 2004, the Named Insured was changed to "Tarragon Corporation." Under change endorsements effective March 16, 2004 and May 6, 2004, "Celebration Tarragon, LLP" and "Tarragon South Development Corp.," respectively, were added as Named Insureds.

b. Policy No. SLO0001297, effective 05/01/2005 to 05/01/2006, was issued to "Tarragon Corporation," "Tarragon South Development Corp.," and "Celebration Tarragon, LLC" as Named Insureds.

c. Policy No. SLO0001630, effective 05/01/2006 to 05/01/2007, was issued to "Tarragon Corporation" as the Named Insured; however, neither "Tarragon South Development Corp." nor "Celebration Tarragon, LLC" are Named Insureds. Copies of the policies are attached as Exhibits "C-1", "C-2" and "C-3."

22. The principal coverage form for the Policies is Form MSI 101 (08/02), titled "Excess General Liability Insurance Policy Occurrence Policy Provisions." It contains the following relevant provisions:

14502927v1 0916579 11654

## SECTION I – COVERAGE

### Insuring Agreement

We will pay on behalf of the **insured, ultimate net loss** in excess of the **self-insured retention** because of:

1.       **Bodily injury**,
2.       **Property damage**,
3.       **Personal injury**, or
4.       **Advertising injury**

to which this policy applies caused by an **occurrence** that takes place within both the **coverage territory** and the **policy period**.

## SECTION II – DEFINITIONS

**Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**Insured contract** means:

g.       That part of any contract or agreement pertaining to your business under which you assume the tort liability of another to pay **damages** because of **bodily injury** or **property damage** to a third person or organization, if the contract or agreement is made in writing prior to the **bodily injury** or **property damage**. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**Occurrence** means, with respect to:

a.       **Bodily injury** or **property damage**: an accident, including continuous or repeated exposure to substantially the same general conditions...

**Pollution** means any solid, liquid, gaseous or thermal or biological irritant, or contaminant, including but not limited to smoke, vapor, soot, lead, asbestos fibers or spores, mold, mildew, fungus or decay fumes, fumes, acids, alkalis, chemicals, toxins derived from, or the presence of mold, mildew, fungus or decay and waste derived from any source, including but not limited to petroleum derivative products, which contaminate, pollute chemicals and waste and/or defile any physical substance or matter. Waste includes materials to be recycled, reconditioned or reclaimed.

14502927v1 0916579 11654

**Products-completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises you own or rent and arising out **of your product** or **your work** except:

a.      Products that are still in your physical possession; or

b.      Work that has not yet been completed or abandoned.

**Your work** will be deemed completed at the earliest of the following times:

a.      When all of the work called for in your contract has been completed.

b.      When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

c.      When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed...

**Property damage** means:

a.      Physical injury to tangible property, including all resulting loss of use of that property; or

b.      Loss of use of tangible property that is not physically injured.

**Self-insured retention** means the amounts stated in the Declarations as such and

a.      As to "Each **Claim** Retention" means the amount, which you or any **insured**, must pay as **damages** for any one **claim** before we will pay anything;

b.      Subject to the "Each **Claim** Retention" and as respects the "**Products-Completed Operations** Aggregate Retention," means the maximum amount which you or any **insured** must pay as damages for all **claims** arising out of the **products-completed operations hazard**.

**Ultimate net loss** means all sums that the **insured** shall become legally obligated to pay as **damages**, whether by reason of final adjudication or settlement with our written consent.

14502927v1 0916579 11654

**Your product** means:

**a.**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **(1)**    You;
    **(2)**    Others trading under your name; or
    **(3)**    A person or organization whose business or assets you have acquired…

**b.**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in **a.** or **b.** above.

**Your work** means:

**a.**    Work or operations performed by you or on your behalf; and
**b.**    Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items in **a.** or **b.** above.

**SECTION III – EXCLUSIONS**

This policy does not apply to:

**a.**    **Bodily injury**, **property damage**, **personal injury** or **advertising injury** that occurs before or after the end of the **policy period** for this policy.

**d.**    **Damages** claimed for any loss, cost or expense incurred by the insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    **(1)**    **Your product**;
    **(2)**    **Your work**; or
    **(3)**    Property of which **your product** or **your work** forms a part;

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

14502927v1 0916579 11654

e.   **Bodily injury, property damage, personal injury** or **advertising injury** expected or intended from the standpoint of the **insured**…

g.   **Bodily injury** or **property damage**

(1)   for which the **insured** is obligated to pay **damages** by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(a)   Assumed in a contract or agreement that is an **insured contract**, or

(b)   That the **insured** would have in the absence of the contract or agreement.

i.   **Property damage** to:

(1)   Property any **insured** owns, rents or occupies;

(2)   Premises an **insured** sells, gives away or abandons, if the **property damage arises** out of any part of those premises;

(5)   That particular part of real property on which the **insured** or any contractors or subcontractors working directly or indirectly on the **insured's** behalf are performing operations, if the **property damage** arises out of those operations; or

(6)   That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premise are your work and were never occupied, rented or held for rental by the insured.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to property damage included in the **products-completed operations hazard**.

j.   **Property damage** to:

(1)   **Your product** arising out of it or any part of it.

(2)   **Your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

14502927v1  0916579  11654

This exclusion does not apply if a subcontractor performed the damaged work or the work out of which the damage arises on your behalf.

(3)  Property of which **your product** or **your work** forms a part or property that has not been physically injured, arising out of:

    (a)  A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

    (b)  A delay or failure by any **insured** or anyone acting on any **insured's** behalf to perform a contact or agreement in accordance with its terms.

This exclusion does not apply to loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

**m.**   **(1)**   **Bodily injury, property damage, personal injury** or **advertising injury**, arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape, inhalation, ingestion, absorption of or exposure to pollutants, lead, or asbestos:

    (a)  At or from any premises, site, or location which is or was at any time owned or occupied by or rented or loaned to, any **insured**;

    (b)  At or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

    (c)  Which are work were at any time transported, handled, stored, treated, disposed of or processed as wasted by or for any **insured** or any person or organization for whom you may be legally responsible; or

    (d)  At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf have performed or are performing operations;

Subparagraph **(d)** does not apply to **bodily injury, property damage, personal injury** or **advertising injury** arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or

14502927v1  0916579  11654

receive them. This exception does not apply if the fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such **insured**, contractor or subcontractor.

Subparagraphs **(a)** and **(d)** do not apply to **bodily injury, property damage, personal injury** or **advertising injury** arising out of heat, smoke or fumes from a **hostile fire.**

Subparagraphs **(a)** and **(d)** do not apply to **bodily injury**, if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

As used in this exclusion, a **hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

    **(e)**    Caused by, or resulting from, any of your products or completed operations.

  **(2)**  Any loss, cost or expense arising out of any:

    **(a)**    Request, demand or order that any insured or others test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants, lead or asbestos; or...

    **(c)**    Any payment of the investigation or defense of any loss, injury or damage or any cost, fine or for any expense, **claim** or **suit** related to any of the above.

**p.**    **Bodily injury, property damage, personal injury** or **advertising injury** arising out of:

    **(1)**    breach of express or implied contract;
    **(2)**    breach of express or implied warranty;
    **(3)**    fraud or misrepresentation regarding the formation, terms or performance of a contract.

**r.**    **Bodily injury, property damage, personal injury** or **advertising injury** arising prior to the **policy period**, if any insured listed under Paragraph **1.** or **2.** of **SECTION IV – WHO IS AN INSURED** or any **employee** authorized by you to give or receive notice of an occurrence or claim, knew that the **bodily injury, property damage, personal injury** or **advertising injury** had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the **policy period**, that the

14502927v1 0916579 11654

**bodily injury, property damage, personal injury** or **advertising injury** occurred, then any continuation, change or resumption of such **bodily injury, property damage, personal injury** or **advertising injury** during or after the **policy period** will be deemed to have been known prior to the **policy period**.

**Bodily injury, property damage, personal injury** or **advertising injury** will be deemed to have been known to have occurred at the earliest time when any **insured** listed under Paragraph **1.** or **2.** of **SECTION IV – WHO IS AN INSURED** or any **employee** authorized by you to give or receive notice of an **occurrence** or **claim**:

(1)     Reports all, or any part, of the **bodily injury, property damage, personal injury**, or **advertising injury** to us or any other insurer;

(2)     Receives a written or verbal demand or claim for damages because of the **bodily injury, property damage, personal injury**, or **advertising injury**; or

(3)     Becomes aware by any other means that **bodily injury, property damage, personal injury**, or **advertising injury** has occurred or has begun to occur.

23.     The Policies include Endorsement MSI 315 (08/02), titled "Limitation of Coverage to Designated Premises or Project," which provides:

This insurance applies only to **bodily injury, property damage, personal injury** or **advertising injury** arising out of:

1.     The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises.

2.     The project shown in the Schedule.

24.     The Policies include Endorsement MSI 319 (04/03), titled "Exclusion – Product-Completed Operations Hazard (Converted Apartment Buildings)," which provides in pertinent part:

EXCESS GENERAL LIABILITY INSURANCE POLICY

This insurance does not apply to **bodily injury** or **property damage** included within the **products-completed operations hazard** for apartment buildings or

14502927v1 0916579 11654

complexes if they have been converted into condominiums or co-operatives at any time prior to, during or after the policy period.

25.    Policy Nos. SLO0001297 and SLO0001630 also contain Endorsement CGL 102B

(11/04), titled "Tenants and Contractors – Conditions of Coverage," which provides in pertinent

part:

It is hereby understood and agreed that conditions of coverage under this policy are:

3.    Insured will obtain certificates of insurance with limits of liability equal to or greater than those provided by this policy from all contractors prior to commencement of any work performed for the insured.

4.    Insured will confirm that the contractors' insurance policies have not been cancelled prior to commencement of any work by the contractors performed for the insured.

5.    Insured will obtain executed hold harmless agreements from contractors indemnifying the insured against all losses from the work performed for the insured by any and all contractors prior to the commencement of the work.

6.    Insured will be named as additional insured on all contractors general liability policies prior to the commencement of the work.

7.    Insured will give notice of claim to all "potential insurers" within 10 days of giving notice of claim to us.

"Potential insurers" means all insurance companies who may be obligated to defend the insured as either a named insured or an additional insured. "Potential insurers" includes the insurers of all commercial tenants, commercial leasee and contractors who were contractually obligated to name the insured as an additional insured on their own insurance policy(ies).

In the event that the insured fails to comply with the above conditions for a commercial tenant, commercial leasee or contractor who tenancy, activity on the premises, negligence or work directly or indirectly gives rise to a claim, coverage for such claim will be voided under this policy. Insured agrees that we need not demonstrate any prejudice to us in order to enforce these conditions of coverage.

14502927v1 0916579 11654

### COUNT I – NO COVERAGE DUE TO ABSENSE OF PROPERTY DAMAGE
#### (Against All Tarragon Entities)

26.     Mt. Hawley realleges paragraphs 1 through 25.

27.     Under the insuring agreements, the policies provide coverage for "property damage" caused by an occurrence.

28.     "Property damage" does not include the cost to repair and replace the Tarragon Entities' defective work/defective product.

29.     Accordingly, there is no coverage for the Tarragon Entities since the Association's claim is for the cost to repair and replace the Tarragon Entities' defective work/defective product.

**WHEREFORE**, Mt. Hawley respectfully requests this Court to:

      a.     Take jurisdiction and adjudicate the rights of the parties under the policies;

      b.     Find and declare that Mt. Hawley's has no coverage obligation to the Tarragon Entities in the underlying action;

      c.     Award Mt. Hawley its costs in this action and such other and further relief as this Court deems equitable, just, and proper.

### COUNT II – NO COVERAGE SINCE DAMAGES, IF ANY, DID NOT OCCUR DURING THE POLICY PERIODS
#### (Against All Tarragon Entities)

30.     Mt. Hawley realleges paragraphs 1 through 25.

31.     Under the insuring agreements, the policies cover "property damage" only if it occurred during the policy period.

32.     To the extent that "property damage," if any, occurred outside the policy periods, there is no coverage for the Tarragon Entities.

14502927v1 0916579 11654

**WHEREFORE**, Mt. Hawley respectfully requests this Court to:

a.      Take jurisdiction and adjudicate the rights of the parties under the policies;

b.      Find and declare that Mt. Hawley's has no coverage obligation to the Tarragon Entities in the underlying action;

c.      Award Mt. Hawley its costs in this action and such other and further relief as this Court deems equitable, just, and proper.

## COUNT III – NO COVERAGE DUE TO POLICY EXCLUSIONS
### (Against All Tarragon Entities)

33.     Mt. Hawley realleges paragraphs 1 through 25.

34.     The Policies contain exclusions that bar coverage for the claims asserted against the Tarragon Entities in the underlying lawsuit.  These exclusions include:

a.      Exclusion a., which bars coverage for property damage that occurs outside of the policy period;

b.      Exclusion d., which bars coverage for work that must be repaired, replaced or adjusted;

c.      Exclusion g., which bars coverage for liability assumed in a contract or agreement;

d.      Exclusion i., which bars coverage for property damage to: (1) property that the Tarragon Entities own, rent or occupy; (2) premises the Tarragon entities sold; (3) the particular part of real property on which the Tarragon Entities were performing operations; and (4) that particular part of real property that must be restored repaired or replaced because the Tarragon Entities' work was incorrectly performed on it;

14502927v1 0916579 11654

  e.  Exclusion j., which bars coverage for property damage to the Tarragon Entities' work or products;

  f.  Exclusion m., which bars coverage for any damage arising out of "pollution" as defined under the Policies;

  g.  Exclusion p., which bars coverage for damages arising out of breach of express or implied contract or warranty, or fraud or misrepresentation regarding the formation, terms or performance of contracts; and

  h.  Exclusion r., which bars coverage to the extent that the Tarragon Entities were aware of defective conditions prior to the inception of the policies.

35.  Based on these exclusions, there is no coverage for the Tarragon Entities under the Policies.

**WHEREFORE**, Mt. Hawley respectfully requests this Court to:

  a.  Take jurisdiction and adjudicate the rights of the parties under the policies;

  b.  Find and declare that Mt. Hawley has no coverage obligation to the Tarragon Entities in the underlying action; and

  c.  Award Mt. Hawley its costs in this action and such other and further relief as this Court deems equitable, just and proper.

### COUNT IV – NO COVERAGE UNDER THE PRODUCTS-COMPLETED OPERATIONS HAZARD CONVERTED APARTMENT BUILDINGS ENDORSEMENT
**(Against All Tarragon Entities)**

36.  Mt. Hawley realleges paragraphs 1 through 25.

37.  Under the policies' Products-Completed Operations Hazard (Converted Apartment Buildings) endorsement, there is no coverage for apartment buildings or complexes

14502927v1 0916579 11654

that have been are converted into condominiums at any time prior to, during, or after the policy period.

38.     The Tarragon Entities purchased the subject property as an apartment complex and converted it to a condominium.

39.     Accordingly, Mt. Hawley has no coverage obligation to the Tarragon Entities under the Policies.

**WHEREFORE**, Mt. Hawley respectfully requests this Court to:

        a.      Take jurisdiction and adjudicate the rights of the parties under the policies;

        b.      Find and declare that Mt. Hawley has no coverage obligation to the Tarragon Entities in the underlying action; and

        c.      Award Mt. Hawley its costs in this action and such other and further relief as this Court deems equitable, just and proper.

## COUNT V – NO COVERAGE UNDER POLICIES SLO0001297 AND SLO0001630 SINCE THE CONDOMINIUM IS NOT A COVERED LOCATION
### (Against All Tarragon Entities)

40.     Mt. Hawley realleges paragraphs 1 through 25.

41.     Under the policies' Limitation of Coverage to Designated Premises or Project endorsement, the policies provide coverage only for the designated premises shown in the Schedule and operations necessary or incidental to those designated premises.

42.     The address of the subject property, 701 Celebration Avenue, Celebration, Florida 34747 is not a designated premises under Policy No. SLO0001297 or Policy No. SLO0001630.

43.     Accordingly, Mt. Hawley has coverage obligation to the Tarragon Entities under Policy Nos. SLO0001297 and SLO0001630.

14502927v1 0916579 11654

**WHEREFORE**, Mt. Hawley respectfully requests this Court to:

a.  Take jurisdiction and adjudicate the rights of the parties under the policies;

b.  Find and declare that Mt. Hawley has no coverage obligation to the Tarragon Entities under Policy Nos. SLO0001297 and SLO0001630; and

c.  Award Mt. Hawley its costs in this action and such other and further relief as this Court deems equitable, just and proper.

### COUNT VI – NO COVERAGE FOR FAILURE TO COMPLY WITH THE TENANTS AND CONTRACTORS – CONDITIONS OF COVERAGE ENDORSEMENT
### (Against All Tarragon Entities)

44.  Mt. Hawley realleges paragraphs 1 through 25.

45.  Under the Tenants and Contractors – Conditions of Coverage endorsement contained in Policy Nos. SLO0001297 and SLO0001630, coverage is void to the extent the insured fails to comply with the conditions set forth in the endorsement.

46.  To the extent the Tarragon Entities hired contractors in connection with the condominium conversion, they failed to comply with these conditions.

47.  Accordingly, Mt. Hawley has no coverage obligation to the Tarragon Entities under Policy Nos. SLO0001297 and SLO0001630.

48.  In view of the foregoing, an actual and present controversy exists between the parties as to Mt. Hawley's obligation to indemnify the Tarragon Entities in the underlying action.

**WHEREFORE**, Mt. Hawley respectfully requests this Court to:

a.  Take jurisdiction and adjudicate the rights of the parties under the policies;

b.  Find and declare that Mt. Hawley has no coverage obligations under Policy Nos. SLO0001297 and SLO0001630 for the Tarragon Entities; and

14502927v1 0916579 11654

c.      Award Mt. Hawley its costs in this action and such other and further relief as this Court deems equitable, just and proper.

## COUNT VII – NO COVERAGE FOR CELEBRATION TARRAGON AND TARRAGON SOUTH BECAUSE THEY ARE NOT INSUREDS UNDER POLICY NO. SLO0001630
### (Against Celebration Tarragon and Tarragon South Only)

49.     Mt. Hawley realleges paragraphs 1 through 25.

50.     Celebration Tarragon and Tarragon South are not Named Insureds under Policy No. SLO0001630 and do not otherwise qualify as insureds under Policy No. SLO0001630.

51.     Accordingly, there is no coverage for Celebration Tarragon and Tarragon South under Policy No. SLO0001630.

**WHEREFORE**, Mt. Hawley respectfully requests this Court to:

a.      Take jurisdiction and adjudicate the rights of the parties under the policies;

b.      Find and declare that Mt. Hawley has no coverage obligation under Policy No. SLO0001630 to Celebration Tarragon and Tarragon South; and

c.      Award Mt. Hawley its costs in this action and such other and further relief as this Court deems equitable, just and proper.

Dated: March 18, 2011.

14502927v1 0916579 11654

Respectfully Submitted,

/s/ SINA BAHADORAN
**SINA BAHADORAN**
Florida Bar No. 523364
sbahadoran@hinshawlaw.com
**ERIC A. HILLER**
ehiller@hinshawlaw.com
Florida Bar No. 0027920
HINSHAW & CULBERTSON LLP
9155 S. Dadeland Boulevard
Suite 1600
Miami, Florida 33156-2741
Telephone: 305-358-7747
Facsimile: 305-577-1063

14502927v1 0916579 11654